UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PRINCE E. EDWARDS,

               Plaintiff,            1:14-cv-00486-AA

               v.                  ORDER

A. BYBEE, et al.,

               Defendants.

AIKEN, District Judge.

Plaintiff, an inmate in the custody of the Oregon Department of Corrections (ODOC), currently incarcerated at the Snake River Correctional Institution in Ontario, filed a complaint under 42 U.S.C. § 1983, alleging that defendants violated his Fourth and Eighth Amendment rights to be free from cruel and unusual punishment when they subjected him to an "abusive" strip search. Defendants now move for Summary Judgment (#18).

1 - ORDER

## Background

The party's allegations concerning  the incident giving rise to plaintiff's claims differ significantly.  Defendants allege that on August 24, 2014, plaintiff was standing in line with other inmates waiting to see a movie when defendant Johnston selected five inmates from the group "congregating around the dining hall for unclothed searches" and directed the remaining inmates to disperse until the movie had been announced.  Johnston states "When a large group of inmates assembles in an area not designated by staff or assignment, the concern for unauthorized organization exists as that is one way to make it easier to pass contraband."  Johnston Declaration (#20) p. 2. Defendant Bybee directed a group of about 30 inmates to disperse because they "were crowding around the weightlifting equipment and were not authorized to congregate at that location." Declaration of Amy Bybee (#19) ¶ 5.  Defendant Bybee states that plaintiff became argumentative  and stated, "Take me to R & D.  I got searched every day in the Dominican.  I don't care." *Id*. ¶6. Defendant Bybee then escorted plaintiff to a private area where was searched by defendant Johnston.  Defendant Bybee states that plaintiff's behavior in "volunteering to be searched drew attention and suspicion" to him which resulted in plaintiff being subjected to an unclothed search.  *Id*.

2 - ORDER

Plaintiff describes the incident as follows: Plaintiff
states that while waiting in line for the movie, defendant
Johnston asked for volunteers to help with the movie set-up.
Several inmates volunteered and were selected by Johnston.
However, instead of having the volunteers help with the movie
set-up, defendant Johnston took them to "R&D" [Receiving and
Discharge] to be strip searched. Defendant Johnston then
ordered the remaining inmates not to stand in line until the
movie was announced. Declaration in Opposition (#44) p. 2. The
inmates who where waiting in line, then walked over to the
weight-lifting area to wait until the movie was announced. *Id.*
Defendant Bybee then ordered the inmates not to wait in the
weight-lifting area. Plaintiff states that after being told
not to wait in the weight-lifting area he asked defendant
Bybee where she wanted him to wait because the "yard was open
and as such inmates were authorized to be in the weightlifting
area." Plaintiff's Declaration in Opposition (#45) p. 2.
Plaintiff disputes that he "volunteered" to be searched and
states that he was never told that the search was a result of
suspicion that he may have possessed contraband. Plaintiff
Brief (#43) p. 2. Plaintiff states that defendant Johnston
told him that the reason he was subjected to a strip search is
that Johnston had a "pet peeve" with inmates standing in line
before the movie line was announced.

3 - ORDER

It is undisputed that no contraband was found on plaintiff. Johnston Declaration (#20) ¶ 7.

Subsequently plaintiff filed a grievance alleging that defendants' alleged conduct violated department policies and procedures and violated plaintiff's Eighth Amendment rights. Defendant Kennedy investigated plaintiff's grievance and concluded that plaintiff was in an unauthorized area, that plaintiff volunteered to be stripped/skinned searched as a decoy for other inmates to take contraband into the movie, and that Bybee and Johnston's actions were consistent with department policies and procedures.

Under Oregon Administrative Rule § 291-041-0020(4), an "inmate may be subject to search at any time; but no more frequently than is necessary to control contraband or to recover stolen or missing property."

<u>Plaintiff's claims</u>

Plaintiff alleges that defendants Bybee and Johnston "stripped skin searched" plaintiff without a reasonable suspicion that plaintiff possessed contraband and that the search was "done maliciously and sadistically as a form of punishment and constituted cruel and unusual punishment in violation of the Fourth and Eighth Amendments to the United States Constitution." Complaint (#2) p. 5-6.

Plaintiff alleges that the failure of defendants Gower,

Brown and Kennedy to "take disciplinary actions to curb the known patterns of abuse of inmates by defendants Bybee and Johnston constituted deliberate indifference to the plaintiff's and other prisoners' safety, and contributed to and proximately caused the abuse described violation of plaintiff's Eighth Amendment rights." *Id.* p. 7.

Plaintiff alleges that "the actions of defendant Kennedy finding that through his alleged investigation as the OIC that defendants Bybee and Johnston's actions were in line with department policies and procedures **** constituted a cover-up, deliberate indifference to plaintiff's safety in violation of the Eighth Amendment to the Constitution." *Id.* p. 7.

Plaintiff seeks damages and injunctive relief. Complaint (#1) p. 7.

<u>Analysis:</u>

Plaintiff seeks to hold defendants Gower, Brown and Kennedy liable for failing to take disciplinary action against defendants Bybee and Johnston. Plaintiff's claim in this regard is construed as a claim based on these defendant' role as supervisors of defendants Johnston and Bybee.

To establish a § 1983 claim against an individual defendant, a plaintiff must establish personal participation by the defendant in the alleged constitutional deprivation. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).

5 - ORDER

It is well settled that *respondeat superior* is not a proper basis for liability under 42 U.S.C. § 1983. A supervisor may be liable based on his or her personal involvement in the alleged deprivation, or if there is a sufficient causal connection between the supervisor's alleged wrongful conduct and the alleged deprivation, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989), but a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citing Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984).  See also, Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (supervisory liability only when a) actual or constructive knowledge of a pervasive and unreasonable risk of injury; b) deliberate indifference to or tacit authorization of the practice; and c) an affirmative causal link between inaction and the injury).  Supervisory officials may also be liable if they "implement a policy so deficient that the policy `itself is a repudiation of constitutional rights' and is `the moving force of the constitutional violation.'" Redman v. County of San Diego, 924 F.2d 1435, 1446 (9th Cir. 1991), cert. denied, 112 S. Ct. 972 (1992) (quoting Hansen v. Black, supra, 885 F.2d at 646, in

turn quoting <u>Thompkins v. Belt</u>, 828 F.2d 298, 304 (5th Cir. 1987); <u>see also,</u> <u>Jane Doe A v. Special School District</u>, 901 F.2d 642, 645 (8th Cir. 1990)("The individual defendants are subject to personal liability only if it can be proved that they: 1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; 3) failed to take sufficient remedial action; and 4) that such failure proximately caused injury.").

In this case, plaintiff's claims against Gower, Brown and Kennedy are based on their after the fact failure to discipline defendants Johnston and Bybee for their allegedly unconstitutional conduct. Plaintiff has not alleged any facts that would support *respondeat superior* liability as to these defendants.

Moreover, to the extent that plaintiff seeks to hold defendants Gower and Brown liable in their official capacities,[1] plaintiff's claims are barred by the Eleventh Amendment. *See,* <u>Roman v. Bible</u>, 169 F.3d 1182, 1185 (9th Cir. 1999).

---

[1]

Defendants argue that plaintiff "sues all Defendants in their official and individual capacity." [sic] Defendants' Motion for Summary Judgment (#18) p. 3, However, plaintiff's complaint alleges "official capacity" claims against defendants Gower and Brown only. *See* Complaint (#1) p. 3

7 - ORDER

Plaintiff also alleges that defendants Kennedy's investigation of the incident "constituted a cover-up, deliberate indifference to plaintiff's safety in violation of the Eighth Amendment." (sic) Complaint (#1) p. 6. As discussed below, a routine strip search such as is alleged in this case, does not constitute an Eighth Amendment violation. Therefore, an allegedly inadequate investigation of the incident can not give rise to an Eighth Amendment claim.[2]

### Eighth Amendment

The Eighth Amendment proscribes punishments which involve the "unnecessary and wanton infliction of pain," are grossly disproportionate to the severity of the crime for which the inmate was imprisoned, or are totally without penological justification. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Gregg v. Georgia, 428 U.S. 153, 173 (1976).

In order to establish liability under the Eighth Amendment, a plaintiff must prove two distinct components: 1.) that the plaintiff actually suffered an extreme deprivation or was placed at a substantial risk of suffering a significant injury; and 2) that the defendants acted with a sufficiently culpable state of mind (deliberate indifference). Wilson v. Sieter, 501 U.S. 294, 298 (1991); LeMaire v. Mass, 12 F.3d

---

[2]
Plaintiff has not alleged a Fourth Amendment claim against defendant Kennedy.

8 - ORDER

1444, 1451 (9th Cir. 1993); <u>May v. Bladwin</u>, 109 F.3d 557, 565
(9th Cir. 1997).

The Eighth Amendment does not apply to every deprivation
or even every unnecessary deprivation, suffered by a prisoner,
but only that narrow class of deprivation or "serious injury
inflicted by prison officials acting with a culpable state of
mind." <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).

There is a *de minimis* level of imposition with which the
Constitution is not concerned. <u>Ingraham v. Wright</u>, 430 U.S.
651, 674 (1977). Extreme deprivations are required to make
out a conditions of confinement claim. Because routine
discomfort is "part of the penalty that criminal offenders pay
for their offense against society," only those deprivations
denying the 'minimal civilized measure of life's necessities'
are sufficiently grave to form the basis of an Eighth
Amendment violation." <u>Hudson v. McMillian</u>, <u>supra</u>, at p. 8-9,
*quoting* <u>Rhodes v. Chapman</u>, <u>supra</u> at 347 and <u>Wilson v. Seiter</u>,
supra at 298.

The Seventh Circuit cases cited by defendants suggest
that the alleged facts in this case could establish an Eighth
Amendment claim. *See*, <u>Whitman v. Nesic</u>, 368 F.3d 931, 934 (7th
Cir. 2004) [in the context of Eighth Amendment, strip searches
are permissible unless they are "maliciously motivated,
unrelated to institutional security, and ... without

9 - ORDER

penological justification."]; <u>Peckham v. Wis. Dep't of Corrections</u>, 141 F.3d 694, 697 (7th Cir. 1998) [In order to state an Eighth Amendment claim for strip search, plaintiff has to show that the search was conducted in a harassing manner intended to humiliate and inflict psychological pain].

However, I find that the Ninth Circuit case of <u>Somers v. Thurman</u>, 109 F.3d 614, 622 (9th Cir.), *cert. denied*, 522 U.S. 852 (1997) is more consistent with the well settled Eighth Amendment standards set forth above. Even though *Somers* involved an opposite gender component and a "mocking" aspect, neither of which is present in this case, the Ninth Circuit held that cross-gender strip searches even when accompanied by harassing remarks, are not objectively harmful enough to constitute an Eighth Amendment violation.

This is not to say that an unnecessarily intrusive, violent or sadistic bodily search could not form the basis of an Eighth Amendment violation. This case does not involve the special concerns articulated by the court in <u>Jordan v. Gardner</u>, 986 F.2d 1521 (9th Cir. 1993) (en banc] (holding that random cross-gender body searches of female inmates violated the "Eighth Amendment prohibition against unnecessary and wanton infliction of pain ... under the circumstances of this case."]. However, I find that absent circumstances not present in the case at bar, a routine stripped-skin search

10 - ORDER

does not rise to the level of an Eighth Amendment violation –
even if maliciously motivated.

<u>Fourth Amendment:</u>

The Fourth Amendment guarantees "[t]he right of the
people to be secure ... against unreasonable searches and
seizures." This right extends to incarcerated individuals,
however, the reasonableness of a particular search is
determined by reference to the prison context. The Supreme
Court has held that prisoners have no Fourth Amendment right
to be free from strip searches. <u>Bell v. Wolfish</u>, 441 U.S. 520
(1979). However, a strip search must have some penological
justification. *Id.* In <u>Bell v. Wolfish</u>, the Supreme Court set
forth the following balancing test for determining whether a
search is reasonable.

> The test of reasonableness under the Fourth
> Amendment is not capable of precise definition or
> mechanical application. In each case it requires a
> balancing of the need for the particular search
> against the invasion of personal rights that the
> search entails. The Court must consider the scope
> of the particular intrusion, the manner in which it
> is conducted, the justification for initiating it,
> and the place in which it was conducted.

*Id.* 441 U.S. at 559; *see also*, <u>Turner v. Safley</u>, 482 U.S. 78
(1987).

An inmate can establish a Fourth Amendment claim for an
unreasonable search by proving the search was abusive, and not
reasonably related to a legitimate penological objective. *See,*

11 - ORDER

Somers. Thurman, 109 F.3d 614,  622 n. 5 (9th Cir.), *cert. denied*, 522 U.S. 852 (1997)(abusive search may give rise to Fourth Amendment claim); Michenfelder v. Sumner, 860 F.2d 328, 332-34 (9th Cir. 1988) (strip search which is excessive, vindictive, harassing or unrelated to legitimate penological interests violates Fourth Amendment); Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997) (same).

As set forth above, the parties allege widely different factual versions of the incident giving rise to plaintiff's claims. Plaintiff has alleged facts that would support a finding that the search was vindictive and abusive based on defendant Johnston's "pet peeve" about inmates lining up before the movie line is announced rather than a legitimate penological objective.  These allegations, if proved could support a Fourth Amendment claim.

## Qualified immunity:

The doctrine of qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). While public officials are thus generally protected from civil liability under the doctrine, the defense will fail where their actions violate

law that is clearly established, because "a reasonably competent public official should know the law governing his conduct." *Id.* at 819. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law..'" Hunter v. Bryant, 502 U.S. 224 (1991) (quoting Malley v. Briggs, 475 U.S. 335341 (1986).

Until recently courts considering an official claim of qualified immunity followed the two-step protocol established in *Saucier v. Katz*, 533 U.S. 194 (2001), which required the court  first to determine whether the defendant violated a constitutional right and then to determine whether that right was clearly established. *See, Pearson v. Callahan*, 555 U.S. 223 (2009) (overturning *Saucier* in part). In *Pearson v. Callahan*, the Supreme Court reversed this earlier rule and gave courts discretion to grant qualified immunity on the basis of the "clearly established" prong alone, without deciding in the first instance whether any right had been violated. *Id.* Thus, we may grant qualified immunity if 'the facts that a plaintiff has alleged or shown [do not] make out a violation of a constitutional right' or if 'the right at issue was [not] clearly established at the time of the defendant's alleged conduct.' *Id.* at 816, 818 (internal citations omitted). *See also*, James v. Rowlands, 606 F.3d 646

13 - ORDER

(9th Cir. 2010).

In *Somers v. Thurman, supra*, in reversing the District Court's grant of summary judgment, the Ninth Circuit held that there was "no question that it was not clearly established" that "prison inmates have a Fourth Amendment right to be free from routine unclothed searches by officials of the opposite sex." 483 U.S. at 641.

However, as noted above, *Somers* is distinguishable on the facts from this case and the question here is whether there is a clearly established Fourth Amendment right to be free from being strip searched based on a "pet peeve" rather than a legitimate penological objective. I find that there is and that a reasonable prison officer should have been aware of that right.[3]

<u>Summary</u>

Based on all of the foregoing, I find that there is no genuine dispute as to any material fact, and that defendants are entitled to judgment as a matter of law as to plaintiff's claims against defendants Gower, Brown and Kennedy and as to plaintiff's Eighth Amendment claims against defendants Johnston and Bybee. Defendants' Motion for Summary Judgment (#18) is allowed as to those claims. Material issues of fact

_____

[3] Even if defendants were entitled to qualified immunity for liability in damages, plaintiff also seeks injunctive relief.

14 - ORDER

exist as to plaintiff's Fourth Amendment claims against defendants Johnston and Bybee. Specifically, factual issues exist as to whether Johnston and Bybee's decision to search plaintiff was in  good faith and consistent with Oregon Administrative Rule 291-041-0020(4), or because defendant Johnston had a "pet peeve" against inmates lining up before the movie line was announced. In addition, I find that defendants Johnston and Bybee are not entitled to qualified immunity under the alleged circumstances of this case. Defendants' Motion for Summary Judgment (#18) is denied as to plaintiff's Fourth Amendment claim based on those allegations.

IT IS SO ORDERED

DATED this ___4___ day of ~~November~~ December, 2014.

_____
Ann Aiken
United States District Judge

15 - ORDER